UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

JONATHAN COHEN, SANDRA FABARA,          :   Case No. 13-CV-5612 (FB)(JMA)
LUIS LAMBOY, ESTEBAN DEL VALLE          :
RODRIGO HENTER DE REZENDE, WILLIAM      :   **SECOND AMENDED**
TRAMONTOZOZZI, JR., THOMAS LUCERO       :   **COMPLAINT**
AKIKO MIYAKAMI, CHRISTIAN CORTES,       :
CARLOS GAME, JAMES ROCCO, STEVEN LEW,   :   **JURY TRIAL**
FRANCISCO FERNANDEZ and NICHOLAI KHAN,  :   **DEMANDED**
                                        :
                       Plaintiffs,      :
                                        :
      -against-                         :
                                        :
G&M REALTY L.P., 22-50 JACKSON AVENUE   :
OWNERS, L.P., 22-52 JACKSON AVENUE LLC, :
ACD CITIVIEW BUILDINGS, LLC and GERALD  :
WOLKOFF,                                :
                                        :
                       Defendants.      :

-------------------------------------------------------------------------X

   Plaintiffs JONATHAN COHEN, SANDRA FABARA, LUIS LAMBOY, ESTEBAN

DEL VALLE, RODRIGO HENTER DE REZENDE, WILLIAM TRAMONTOZOZZI, JR.,

THOMAS LUCERO, AKIKO MIYAKAMI, CHRISTIAN CORTES, CARLOS GAME,

JAMES ROCCO, STEVEN LEW, FRANCISCO FERNANDEZ and NICHOLAI KHAN,

("Plaintiffs"), by and through their undersigned counsel, EISENBERG & BAUM, LLP, as and

for their Complaint against Defendants G&M REALTY L.P., 22-50 JACKSON AVENUE

OWNERS, L.P., 22-52 JACKSON AVENUE LLC, ACD CITIVIEW BUILDINGS, LLC and

GERALD WOLKOFF, ("Defendants") hereby allege as follows:

## PRELIMINARY STATEMENT

1.      For more than a decade, Defendants permitted Plaintiffs, a group of renowned visual artists, to create and display their work on the exterior and interior of a derelict property owned by Defendants in Long Island City, Queens.  Over the years, the spectacular artistic creations blossomed into an international tourist attraction and transformed the neighborhood from a virtual wasteland into an attractive place for residential development.  Without giving Plaintiffs a fair opportunity to remove and preserve their work, or even the minimum notice required by law, Defendants suddenly decided to destroy it under cover of night, even though at the time of the destruction they were far from ready to demolish the buildings in question.  The destruction was gratuitous, willful and wanton, and undertaken without regard to the feelings, reputations or financial interests of the plaintiffs, who now seek compensation for their devastating losses.

## NATURE OF THE CLAIMS

2.      Plaintiffs seek declaratory, injunctive, and equitable relief, monetary damages, and attorneys fees to redress Defendants' unlawful destruction of their works of art in violation of the Visual Artists Rights Act, 17 U.S.C. §106A *et seq.* ("VARA").

3.      Plaintiffs also assert tort claims pursuant to the common law.

## THE PARTIES

4.      Plaintiff Jonathan Cohen resides in Brooklyn, New York, and is a professional artist under the name "Meres One" ("Cohen"). Cohen is the "author of a work of visual art" within the meaning of 17 U.S.C §106A.

2

5.     Plaintiff Sandra Fabara resides in Gardiner, New York, and is a professional artist under the name "Lady Pink" ("Fabara"). Fabara is the "author of a work of visual art" within the meaning of 17 U.S.C. §106A.

6.     Plaintiff Luis Lamboy resides in the Bronx, New York, and is a professional artist under the name "Zimad" ("Lamboy"). Lamboy is the "author of a work of visual art" within the meaning of 17 U.S.C. §106A.

7.     Plaintiff Esteban Del Valle resides in Brooklyn, New York ("Del Valle"). Del Valle is the "author of a work of visual art" within the meaning of 17 U.S.C. §106A.

8.     Plaintiff Rodrigo Henter de Rezende resides in Brazil, and is a professional artist under the name "AK47" ("Henter de Rezende "). Henter de Rezende is the "author of a work of visual art" within the meaning of 17 U.S.C. §106A.

9.     Plaintiff William Tramontozzi, Jr. resides in College Point, New York, and is a professional artist under the name "JSOne" and "Jerms" ("Tramontozzi"). Tramontozzi is the "author of a work of visual art" within the meaning of 17 U.S.C. §106A.

10.     Plaintiff Thomas Lucero resides in Valley Stream, New York, and is a professional artist under the name "AuksOne" ("Lucero"). Lucero is the "author of a work of visual art" within the meaning of 17 U.S.C. § 106A.

11.     Plaintiff Akiko Miyakami resides in Long Island City, New York, and is a professional artist under the name "Shiro" ("Miyakami"). Miyakami is the "author of a work of visual art" within the meaning of 17 U.S.C. §I06A.

12.     Plaintiff Christian Cortes resides in Flushing, New York, and is a professional artist ("Cortes"). Cortes is the "author of a work of visual art" within the meaning of 7 U.S.C. §106A.

3

13.     Plaintiff Carlos Game resides in Rockaway Beach, New York and is a professional artist under the name "SEE TF" ("Game").  Game is the "author of a work of visual art" within the meaning of 17 U.S.C. §106A.

14.     Plaintiff James Rocco resides in Rego Park, New York and is a professional artist under the name "Topaz" ("Rocco"). Rocco is the "author of a work of visual art" within the meaning of 17 U.S.C. §106A.

15.     Plaintiff Steven Lew resides in Little Neck, New York and is a professional artist under the name "Kid Lew" ("Lew").  Lew is the "author of a work of visual art" within the meaning of 17 U.S.C. §106A.

16.     Plaintiff Francisco Fernandez resides in New Windsor, New York and is a professional artist under the name "Dasic" ("Fernandez"). Fernandez is the "author of a work of visual art" within the meaning of 17 U.S.C. §106A.

17.     Plaintiff Nicholai Khan resides in Bayside, New York and is a professional artist ("Khan"). Khan  is the "author of a work of visual art" within the meaning of 17 U.S.C. §106A.

18.     Cohen, Fabara, Lamboy, Del Valle, Henter de Rezende , Tramontozzi, Lucero, Miyakami, Cortes, Game, Rocco, Lew, Fernandez and Khan are referred to collectively herein as "Plaintiffs."

19.     Defendant G & M Realty L.P. ("G&M Realty") is a New York limited partnership with an office and principal place of business at I Executive Drive, Edgewood, New York, 11717.

20.     Defendant 22-50 Jackson Avenue Owners L.P. ("Jackson Owners") is a New York limited partnership with an office and principal place of business at I Executive Drive, Edgewood, New York, 11717.

4

21.     Defendant 22-52 Jackson Avenue, LLC ("22-52 Jackson") is a New York limited liability corporation with an office and principal place of business c/o Alan Hoffman, 85 West Hawthorne Ave., Valley Stream, New York, 11590.

22.     Defendant ACD Citiview Buildings, LLC ("Citiview") is a New York limited liability corporation with an office and principal place of business at I Executive Drive, Edgewood, New York, 11717.

23.     Defendant Gerald Wolkoff ("Wolkoff") is an individual with an office and principal place of business at I Executive Drive, Edgewood, New York, 11717.

24.     G&M Realty, Jackson Owners, 22-52 Jackson, Citiview and Wolkoff are referred to collectively herein as "Defendants."

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that this civil rights action arises under federal law, *see* 29 U.S.C. § 621 et seq. The court has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. §1367 and principles of pendent and/or ancillary jurisdiction.

26.     This court has *in personam* jurisdiction over Defendants because they own real property and conduct operations within, transact business in and provide services within New York City, State of New York.

27.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events that give rise to the claim occurred in this district.

## BACKGROUND

### I.    The 5Pointz Properties

### A.    Queens Block 86, Lot 1

28.    Defendant G&M Realty is the owner in fee simple of certain improved real property located at 46-23 Crane Street, 46-09 Crane Street, 45-46 Davis Street, 45-12 Davis Street, 22-42 Jackson Avenue and 22-44 Jackson Avenue, Queens, New York (collectively these addresses comprise Queens Block 86, Lot I) ("Queens Block 86, Lot 1").

29.    Either G&M Realty or other entities owned or controlled by Wolkoff, have owned Queens Block 86, Lot I in fee simple since on or about 1971.

### B.    The 46-45 Crane Street Lot

30.    Defendant G&M Realty is the owner in fee simple of certain improved real property located at 46-45 Crane Street, Queens, New York ("Queens Block 86, Lot 22").

31.    Either G&M Realty or other entities owned or controlled by Wolkoff, have owned Queens Block 86, Lot 22 in fee simple since on or about 1971.

### C.    The 22-50 Jackson Avenue Lot

32.    Defendant Jackson Owners is the owner in fee simple of certain improved real property located at 22-50 Jackson Avenue, Queens, New York ("Queens Block 86, Lot 6").

33.    Either Jackson Owners or other entities owned or controlled by Wolkoff, have owned Queens Block 86, Lot 6 in fee simple since on or about 2005.

### D.    The 22-48 Jackson Avenue Lot

34.    Defendant Jackson Owners is the owner in fee simple of certain improved real property located at 22-48 Jackson Avenue, Queens, New York ("Queens Block 86, Lot 7").

35.    Either Jackson Owners or other entities owned or controlled by Wolkoff, have

owned Queens Block 86, Lot 7 in fee simple since on or about 2001.

### E.     The 22-52 Jackson Avenue Lot

36.     Defendant 22-52 Jackson is the owner in fee simple of certain improved real property located at 22-52 Jackson Avenue a/k/a 45-06 Davis Street, Queens, New York ("Queens Block 86, Lot 8").

37.     Defendant Citiview is currently holding itself out as the owner in fee simple of Queens Block 86, Lot 8 in various eviction actions pending in New York State Civil Court.

38.     22-52 Jackson, Citiview or other entities owned or controlled by Wolkoff, have owned Queens Block 86, Lot 8 in fee simple since on or about 2004.

39.     Queens Block 86, Lots 1,6,7,8 and 22, inclusive, are referred to collectively herein as "5Pointz."

### II.     5Pointz As The Mecca Of The Aerosol Art World

40.     Beginning in approximately 1993, Wolkoff permitted artists to use the interior and exterior walls of 5Pointz for works of visual art.

41.     Cohen is an artist by training who has painted hundreds of commissioned art pieces throughout the East Coast and in Europe.

42.     In or around 2002, Wolkoff and Cohen agreed that Cohen would take over as the volunteer curator/registrar/director/manager of the art program at 5Pointz. Wolkoff gave Cohen keys to 5Pointz and leased several secure spaces in 5Pointz for Cohen to use as an office and to store cans of spray paint, ladders and other painting supplies for Cohen and other artists.

43.     Wolkoff gave Cohen full authority to determine what works of visual art could be painted on 5Pointz, with three restrictions: a) the works of visual art were not to be political; b) they were to contain nothing religious; and c) no pornography was allowed.

44.     Wolkoff directed Cohen to have works of visual art painted on every 5Pointz building.

45.     Wolkoff did not request or require that title to the works of visual art be transferred to him.

46.     Each individual artist, or group of artists, retained all copyrights to his, her or their works of visual art.

47.     None of the artists who have painted works of visual art on or at 5Pointz was paid for his or her time or work.

48.     Since Cohen became curator at 5Pointz, no artist has been allowed to put a work of visual art on or at 5Pointz without Cohen's express permission.

49.     Cohen would only allow artists to place works of visual art on or at 5Pointz after they provided a portfolio of their work and he approved their proposed piece to ensure that the proposed visual art met the requirements imposed by Wolkoff.

50.     Artists were required to provide proposed layouts of their proposed works of visual art so that Cohen could determine where to place the works of art on or at 5Pointz.

51.     Some of the larger, more elaborate works of visual art on 5Pointz took extended periods of time to create.

52.     Beginning in 2002, the works of visual art on 5Pointz developed into one of the foremost collections of aerosol art in the world, and this has resulted in 5Pointz being referred to as world's "Graffiti Mecca."

53.     The non-profit corporation formed by Cohen, 5Pointz Aerosol Arts Center, Inc., maintains a website which showcases the works of visual art that were on or at 5Pointz and publicizes the free community events sponsored by 5Pointz.

8

54.     Because of its stature in the international art community and its high visibility, having a work of visual art accepted and displayed on 5Pointz added considerable prestige to an artist's reputation.

55.     For aspiring artists, having a work of visual art accepted and displayed on 5Pointz was guaranteed to raise their profile and enhance their credibility in the art world.

56.     Artists have traveled from as far away as Kazakhstan, Australia, Japan and Brazil for the opportunity to paint their works of visual art on 5Pointz.

57.     5Pointz is listed in many major guidebooks covering New York City, and is included in numerous international travel guides as well.

58.     In any given week of its operation, hundreds of tourists from all around the world visited 5Pointz to see the works of visual art displayed there.

59.     As the Christian Science Monitor observed, many patrons of MoMA's P.S. 1, located across the street from 5Pointz, were "inexorably drawn" to cross the street and view 5Pointz as well.

60.     Thousands of New York City subway passengers also viewed 5Pointz every day from the Number 7 subway train that passes by the building.

61.     In addition, Cohen conducted over 100 formal school tours of 5Pointz every year for groups ranging from university students -- including Parsons School of Design -- to children as young as seven years of age.

62.     Over the last two decades, 5Pointz has become a Long Island City landmark, and has been featured in films (such as "Now You See Me"), television programs (such as "Project Runway") as well as music videos and commercial photo shoots.

63.     For instance, world-renowned fashion designer Donna Karan used photographic

murals depicting 5Pointz on the walls of her Madison Avenue, New York City store to serve as the backdrop for her Spring/Summer 2013 Collection.

64.     For instance, Grammy Award-winning musician Joss Stone filmed the music video for her song "Tell Me 'Bout It" at 5Pointz, and flew Cohen to Los Angeles to do the body paint work for the cover of her album "Introducing Joss Stone."

### III.   The Works of Visual Art at 5Pointz

65.     5Pointz had over 350 works of visual art on its exterior and interior walls at the time Defendants destroyed them.

### A.     Cohen's Works of Visual Art at 5Pointz

66.     Cohen's works of visual art are works of recognized stature. He has exhibited in numerous galleries and shows, and has been the subject of innumerable news articles and television interviews.

67.     Cohen personally had over 100 works of visual art on the exterior and interior walls of 5Pointz.

68.     Cohen's works of visual art on or at 5Pointz included a piece titled "Drunken Bulbs."

69.     Cohen's copyright registration for "Drunken Bulbs" is pending before the United States Copyright Office.

70.     Cohen's works of visual art or at 5Pointz also included a joint work with the artist "TooFly," titled "Love Girl and Burner."

71.     Cohen's copyright registration for "Love Girl and Burner" is pending before the United States Copyright Office.

72.     Cohen's works of visual art on or at 5Pointz also included a joint work with

Miyakami, titled "Underwater Fantasy."

73.     Cohen's copyright registration for "Underwater Fantasy" is pending before the United States Copyright Office.

74.     Cohen's works of visual art on or at 5Pointz also included a tribute to his murdered aunt, titled "Eleanor RIP."

75.     Cohen's copyright registration for "Eleanor RIP" is pending before the United States Copyright Office.

76.     Cohen's works of visual art on or at 5Pointz included an oversized piece created on four surfaces, titled "7 Angle Time Lapse."

77.     Cohen's copyright registration for "7 Angle Time Lapse" is pending before the United States Copyright Office.

78.     Cohen's works of visual art on or at 5Pointz included a work titled "Patience."

79.     Cohen's works of visual art on or at 5Pointz included a joint work with Lamboy and Lucero titled "Angry Orchard."

80.     Cohen's works of visual art on or at 5Pointz included a joint work with Henter de Rezende titled "Halloween Pumpkins."

81.     Cohen's works of visual art on or at 5Pointz included a work titled "Character."

82.     Cohen's works of visual art on or at 5Pointz included a joint work with Miyakami titled "Save 5Pointz."

83.     Cohen's works of visual art on or at 5Pointz included a work titled "Clown With Bulbs."

84.     Cohen's works of visual art on or at 5Pointz included a work titled "Save 5Pointz Gate."

11

85.     Cohen's works of visual art on or at 5Pointz included a work titled "Meres Outdoor Burner."

86.     Cohen's works of visual art on or at 5Pointz included multiple inside works titled "Inside Wildstyles."

87.     Cohen created numerous other works of visual art on or at 5Pointz.

88.     Cohen has not executed or signed a written instrument that specifies that installation of "Drunken Bulbs", "Love Girl and Burner," "Underwater Fantasy," "Eleanor RIP," "7 Angle Time Lapse," "Patience," "Angry Orchard," "Halloween Pumpkins," "Character," "Save 5Pointz," "Clown With Bulbs," "Save 5Pointz Gate," "Meres Outdoor Burner," "Inside Wildstyles" and/or his other works of visual art on or at 5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

**B.     Fabara's Works of Visual Art at 5Pointz**

89.     Fabara's works of visual art are works of recognized stature. She has exhibited in numerous galleries and shows worldwide, and had her first solo show when she was only 21. Fabara is frequently written about in the press.

90.     Fabara had a work of visual art on or at 5Pointz titled "Green Mother Earth."

91.     Fabara's copyright registration for "Green Mother Earth" is pending before the United States Copyright Office.

92.     Fabara created, or may have created, other works of visual art on or at 5Pointz.

93.     Fabara has not executed or signed a written instrument that specifies that installation of "Green Mother Earth" and/or her other works of visual art on or at 5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other

12

modification for any reason, including removal.

**C. Lamboy's Works of Visual Art at 5Pointz**

94. Lamboy's works of visual art are works of recognized stature. He has exhibited in numerous galleries and shows worldwide, and his works of visual art are highly sought after by collectors. Lamboy is frequently written about in the press.

95. Lamboy's works of visual art on or at 5Pointz included a work titled "Blue Jay Wall."

96. Lamboy's copyright registration for "Blue Jay Wall" is pending before the United States Copyright Office.

97. Lamboy's works of visual art on or at 5Pointz included a work titled "Inside 4th Floor."

98. Lamboy's works of visual art on or at 5Pointz included a work titled "World Traveler."

99. Lamboy's works of visual art on or at 5Pointz included a work titled "Logo For Clothing Brand."

100. Lamboy's works of visual art on or at 5Pointz included a work titled "Electric Fish."

101. Lamboy created, or may have created, other works of visual art on or at 5Pointz.

102. Lamboy has not executed or signed a written instrument that specifies that installation of "Blue Jay Wall," "Inside 4th Floor," "World Traveler," "Logo For Clothing Brand," "Electric Fish" and/or his other works of visual art on or at 5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

13

**D.      Del Valle's Works of Visual Art at 5Pointz**

103.     Del Valle's works of visual art are works of recognized stature.  He has exhibited in numerous galleries and shows across the United States, and is frequently written about in the press.

104.     Del Valle had a work of visual art on or at 5Pointz titled "Beauty and the Beast."

105.     Del Valle's copyright registration for "Beauty and the Beast" is pending before the United States Copyright Office.

106.     Del Valle created, or may have created, other works of visual art on or at 5Pointz.

107.     Del Valle has not executed or signed a written instrument that specifies that installation of "Beauty and the Beast" and/or his other works of visual art on or at 5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

**E.      Henter de Rezende's Works of Visual Art at 5Pointz**

108.     Henter de Rezende's works of visual art are works of recognized stature. He has exhibited in numerous galleries and shows worldwide, and is frequently written about in the press.

109.     Henter de Rezende's  works of visual art on or at 5Pointz included a work titled "Fighting Tree."

110.     Henter de Rezende's copyright registration for "Fighting Tree" is pending before the United States Copyright Office.

111.     Henter de Rezende's  works of visual art on or at 5Pointz included a work titled "Halloween Tree."

112.     Henter de Rezende created, or may have created, other works of visual art on or at

14

5Pointz.

113.    Henter de Rezende has not executed or signed a written instrument that specifies that installation of "Fighting Tree," "Halloween Tree" and/or his other works of visual art on or at 5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

F.    **Tramontozzi's Works of Visual Art at 5Pointz**

114.    Tramontozzi's works of visual art are works of recognized stature. He has works of visual art in every graffiti hall of fame in the United States and abroad, and has been featured in several aerosol arts magazines.

115.    Tramontozzi had a joint work of visual art on or at 5Pointz titled "Jimi Hendrix Tribute," which he painted in collaboration with Rocco.

116.    Tramontozzi created, or may have created, other works of visual art on or at 5Pointz.

117.    Tramontozzi has not executed or signed a written instrument that specifies that installation of "Jimi Hendrix Tribute" and/or his other works of visual art on or at 5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

G.    **Lucero's Works of Visual Art at 5Pointz**

118.    Lucero's works of visual art are works of recognized stature.  He has exhibited in numerous galleries and shows across the United States and has dozens of corporate and entertainment clients. Lucero is frequently written about in the press.

119.    Lucero had a work of visual art on or at 5Pointz titled "Black Creature."

120.    Lucero's copyright registration for "Black Creature" is pending before the United

15

States Copyright Office.

121.    Lucero created, or may have created, other works of visual art on or at 5Pointz.

122.    Lucero has not executed or signed a written instrument that specifies that installation of "Black Creature" and/or his other works of visual art on or at 5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

### H.    Miyakami's Works of Visual Art at 5Pointz

123.    Miyakami's works of visual art are works of recognized stature. She has exhibited in numerous galleries and shows, and has participated in large-scale art projects around the globe. Miyakami is frequently written about in the press.

124.    Miyakami had a work of visual art on or at 5Pointz titled "Japanese Irish Girl."

125.    Miyakami's copyright registration for "Japanese Irish Girl" is pending before the United States Copyright Office.

126.    Miyakami also had a work of visual art on or at 5Pointz titled "Manga Koi."

127.    Miyakami's copyright registration for "Manga Koi" is pending before the United States Copyright Office.

128.    Miyakami's works of visual art on or at 5Pointz also included a joint work with Game, titled "Japanese Fantasy."

129.    Miyakami's copyright registration for "Japanese Fantasy" is pending before the United States Copyright Office.

130.    Miyakami's works of visual art on or at 5Pointz also included a joint work with Cohen, titled "Underwater Fantasy."

131.    Miyakami's copyright registration for "Underwater Fantasy" is pending before the

United States Copyright Office.

132.    Miyakami's works of visual art on or at 5Pointz also included a joint work with Cohen, titled "Save 5Pointz."

133.    Miyakami created, or may have created, other works of visual art on or at 5Pointz.

134.    Miyakami has not executed or signed a written instrument that specifies that installation of "Japanese Irish Girl," Manga Koi," "Japanese Fantasy," "Underwater Fantasy," "Save 5Pointz" and/or her other works of visual art on or at 5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

## I.    Cortes' Works of Visual Art at 5Pointz

135.    Cortes' works of visual art are works of recognized stature. He has exhibited in galleries and shows, and is frequently written about in the press.

136.    Cortes had a work of visual art on or at 5Pointz titled "Skulls Cluster."

137.    Cortes' copyright registration for "Skulls Cluster" is pending before the United States Copyright Office.

138.    Cortes had a work of visual art on or at 5Pointz titled "Jackson Avenue Skulls."

139.    Cortes had a work of visual art on or at 5Pointz titled "Up High Blue Skulls."

140.    Cortes had a work of visual art on or at 5Pointz titled "Up High Orange Skulls."

141.    Cortes created, or may have created, other works of visual art on or at 5Pointz.

142.    Cortes has not executed or signed a written instrument that specifies that installation of "Skulls Cluster," "Jackson Avenue Skulls," "Up High Blue Skulls," "Up High Orange Skulls" and/or his other works of visual art on or at5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other modification for any reason,

17

including removal.

### J.  Game's Works of Visual Art at 5Pointz

143.  Game's works of visual art are works of recognized stature. He has exhibited in many venues across the United States, and his works are highly prized by private collectors.

144.  Game had a work of visual art on or at 5Pointz titled "Japanese Fantasy," which he created jointly with Miyakami.

145.  Game had a work of visual art on or at 5Pointz titled "Geisha."

146.  Game's copyright registration for "Geisha" is pending before the United States Copyright Office.

147.  Game had a work of visual art on or at 5Pointz titled "Black and White Fantasy."

148.  Game's copyright registration for "Black and White Fantasy " is pending before the United States Copyright Office.

149.  Game had a work of visual art on or at 5Pointz titled "Marilyn."

150.  Game had a work of visual art on or at 5Pointz titled "Red."

151.  Game had a work of visual art on or at 5Pointz titled "Denim Girl."

152.  Game had a work of visual art on or at 5Pointz titled "Faces on Hut."

153.  Game had a work of visual art on or at 5Pointz titled "Black and White 5Pointz Girl."

154.  Game created, or may have created, other works of visual art on or at 5Pointz.

155.  Game has not executed or signed a written instrument that specifies that installation of "Japanese Fantasy" and/or "Geisha" and/or "Black and White Fantasy" and/or his other works of visual art on or at 5Pointz may subject either of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

**K.     Rocco's Works of Visual Art at 5Pointz**

156.    Rocco's works of visual art are works of recognized stature. He has exhibited in many galleries and exhibits in the United States.

157.    Rocco has a work of visual art on or at 5Pointz titled "Bull Face."

158.    Rocco's copyright registration for "Bull Face" is pending before the United States Copyright Office.

159.    Rocco had a work of visual art on or at 5Pointz titled "Jimi Hendrix Tribute," which he created jointly with Tramontozzi.

160.    Rocco's copyright registration for "Jimi Hendrix Tribute" is pending before the United States Copyright Office.

161.    Rocco had a work of visual art on or at 5Pointz titled "Lord Paz."

162.    Rocco had a work of visual art on or at 5Pointz titled "Face on Jackson."

163.    Rocco created, or may have created, other works of visual art on or at 5Pointz.

164.    Rocco has not executed or signed a written instrument that specifies that installation of "Bull Face" and/or "Jimi Hendrix Tribute" and/or his other works of visual art on or at 5Pointz may subject either of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

**L.     Lew's Works of Visual Art at 5Pointz**

165.    Lew's works of visual art are works of recognized stature. His work can be found in galleries and exhibitions across the country.

166.    Lew had a work of visual art on or at 5Pointz titled "Crazy Monsters."

167.    Lew created, or may have created, other works of visual art on or at 5Pointz.

168.    Lew has not executed or signed a written instrument that specifies that installation

19

of "Crazy Monsters" and/or his other works of visual art on or at 5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

**M.   Fernandez's Works of Visual Art at 5Pointz**

169.   Fernandez's works of visual art are works of recognized stature. His work can be found in galleries and exhibitions in North and South America.

170.   Fernandez had a work of visual art on or at 5Pointz titled "Dream of Oil."

171.   Fernandez created, or may have created, other works of visual art on or at 5Pointz.

172.   Fernandez has not executed or signed a written instrument that specifies that installation of "Dream of Oil" and/or his other works of visual art on or at 5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

**N.   Khan's Work of Visual Art at 5Pointz**

173.   Khan's works of visual art are works of recognized stature. His work can be found in galleries and exhibitions in North and South America.

174.   Khan had a work of visual art on or at 5Pointz titled "Dos Equis Man."

175.   Khan had a work of visual art on or at 5Pointz titled "Orange Clockwork."

176.   Khan created, or may have created, other works of visual art on or at 5Pointz.

177.   Khan has not executed or signed a written instrument that specifies that installation of "Dos Equis Man" or "Orange Clock Work" or his other works of visual art on or at 5Pointz may subject any of those works of visual art to destruction, distortion, mutilation, or other modification for any reason, including removal.

## IV.    The Destruction of the Artwork

178.    G&M Realty brought a proceeding in New York Civil Court, Queens County to evict Cohen from one of the multiple 5Pointz spaces that Wolkoff gave him permission to use.

179.    In settlement of the eviction proceeding, G&M Realty and Cohen executed a so-ordered stipulation that Cohen would vacate the office space -- and only the office space -- on or before November 30, 2013.

180.    Accordingly, Plaintiffs had no reason to believe that their access to their artwork could or would be interfered with before November 30, 2013.  Moreover, at no time did Defendants ever warn Plaintiffs of intent to destroy the artwork prior to the demolition of the structure itself.

181.    Via Order to Show Cause, Plaintiffs sought a preliminary injunction in this Court seeking to preserve the status quo until the final adjudication of this matter.   This Court issued a temporary restraining order preventing both sides from making any alterations to the artwork pending a hearing on the request for preliminary injunction.

182.    Before this Court had issued its Memorandum Decision on the request for preliminary injunction, which it did on November 20, 2013, and before the agreed upon surrender date by Cohen on November 30, 2013, under cover of night on November 19, 2013, defendants whitewashed the artwork, permanently destroying, distorting and/or mutilating it though not entirely concealing all of it.  Defendants had already announced their plan to dismantle the commercial structures that held Plaintiffs' artwork in order to erect new structures for residential housing, meaning that the whitewashing was entirely gratuitous and unnecessary.

183.    By whitewashing the artwork, Defendants denied Plaintiffs the opportunity to remove and/or preserve their art, which could have been readily accomplished prior to or during

the demolition of the building. Defendants could have permitted Plaintiffs to mitigate their damages by removing their artwork or preserving it on digital and/or photographic media, but they chose not to do so. Instead, they chose to act in a manner that can only be seen as having been intended to cause intense shock and emotional trauma by inflicting an egregious public insult.

184.    The whitewashing was carried out in a disgracefully crude, unprofessional manner which was clearly calculated to cause maximum indignity and shame to Plaintiffs. White paint was slapped onto the artwork in a haphazard fashion, and some parts of the artwork were left visible (for example, some bodies remained with only faces whitewashed). A smiley face was applied to some of the artwork with the white paint. The result is the replacement of something beautiful with something profoundly ugly.

185.    In connection with their destruction of the artwork, Defendants have taken or caused to be taken various improper actions which destroy their credibility.

186.    For example, Defendants represented to this Court and the media that they would demolish the 5Pointz site in December 2013, seeking interim relief from the court on this basis. Yet to date no demolition of any kind has occurred. Throughout this period prior to demolition, Plaintiffs could have been taking efforts to preserve and remove their artwork, but were prevented from doing so by the gratuitous whitewashing of the work by Defendants.

187.    For example, Defendants, or their agents or representatives, disconnected and/or disabled New York City Fire Department equipment, and were cited for a) failure to maintain sprinkler control valves "open" with FDNY seal; b) failure to seal standpipe risers valve "open" with approved seals; and c) failure to maintain records for standpipe/sprinkler system, which actions created an extraordinary risk of a catastrophic fire.

22

188.    For example, Defendants have not properly managed their efforts to treat asbestos conditions at the building.

189.    For example, Defendants, or their agents or representatives, have also disconnected and removed gas heaters in 5Pointz recently, without securing necessary permits required pursuant to New York City Code, further increasing the likelihood of a catastrophic fire.

190.    Defendants' conduct evinces a gratuitous, willful and malicious mindset, supporting a claim for punitive damages.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(VARA)**

191.    Plaintiffs repeat and reiterate each and every allegation set forth in the foregoing paragraphs of this First Amended Complaint with the same force and effect as if more fully set forth at length herein.

192.    Each of the Plaintiffs herein created, and maintained all ownership and copyright interests in, works of art subject to the protection of VARA, and installed those works on Defendants' buildings with their permission.

193.    Without providing Plaintiffs with a reasonable opportunity to protect and preserve their artworks, Defendants destroyed, mutilated, modified and defaced each and every one of the works of art installed by Plaintiffs on 5Pointz, including each work of art listed by name herein and other works of art not specifically identified or described herein.  Defendants did not provide Plaintiffs with notice in writing regarding their intent to destroy the artwork nor did they afford Plaintiffs, pursuant to 17 U.S. Code §113, a period of 90 days after receiving such notice either to remove the work or to pay for its removal.

194.    Plaintiffs are artists of recognized stature and requisite professional standing within the meaning of VARA, who are therefore entitled to the statute's protection.  Their works

were in high demand in the public marketplace, they attracted legions of admirers who visited them in situ, and the artists have high name recognition among the artistic community.

195.   Plaintiffs incurred significant financial losses as a result of the wanton destruction of their valuable works of art.

196.   The distortion, mutilation, and/or modification of the work occurred in a manner prejudicial to the plaintiffs' honor and/or reputation, and causing them substantial harm in this regard.

197.   Defendants' actions were willful, wanton and malicious.

### AS AND FOR A SECOND CAUSE OF ACTION
#### (Intentional Infliction of Emotional Distress)

198.   Plaintiffs repeat and reiterate each and every allegation set forth in the foregoing paragraphs of this First Amended Complaint with the same force and effect as if more fully set forth at length herein.

199.   Willfully and with malice aforethought, Defendants gratuitously destroyed artwork belonging to Plaintiffs to which they knew Plaintiffs had profound emotional attachment.

200.   Defendants had no reasonable need to destroy the artwork until they dismantled the building on which it was displayed, but they moved to do so solely to punish and injure Plaintiff's emotionally because Plaintiffs had sought legal protection for the work.  The manner in which the artwork was destroyed was deliberately calculated to show disrespect for the artwork and cause maximum psychological injury.

201.   Plaintiffs did in fact suffer egregious emotional trauma as a result of Defendants' intentional and willful actions which were designed and calculated to cause such trauma.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Conversion)

202.    Plaintiffs repeat and reiterate each and every allegation set forth in the foregoing paragraphs of this First Amended Complaint with the same force and effect as if more fully set forth at length herein.

203.    Defendants committed an actionable wrong other than breach of contract which caused Plaintiffs' injury.

204.    Plaintiffs had ownership of the artwork described herein or an immediate superior right of possession to the artwork at the time it was converted.

205.    Defendants exercised unauthorized dominion or interference over the artwork to the detriment of Plaintiffs.

206.    The artwork was specific and identifiable.

207.    Defendants were to have treated the artwork in a particular manner but it was not so treated, and as a result Plaintiffs suffered the loss of value of their property.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Property Damage)

208.    Plaintiffs repeat and reiterate each and every allegation set forth in the foregoing paragraphs of this First Amended Complaint with the same force and effect as if more fully set forth at length herein.

209.    Defendants violated property rights held by Plaintiffs and destroyed artwork belonging to them contrary to their wishes and without their permission.

210.    Defendants owed a duty to Plaintiffs not to destroy such property and negligently, recklessly and/or willfully breached that duty in destroying said property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

A)   Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures are in violation of the VARA;

B)   Award such damages as will compensate Plaintiffs fully for their financial losses and for the damage to their honor and reputation and for their humiliation, mental anguish, embarrassment, stress and anxiety, loss of self-esteem, self-confidence, personal dignity, shock, emotional distress, inconvenience, emotion pain and suffering and any other physical and mental injuries Plaintiffs suffered due to Defendants improper conduct pursuant to VARA and the common law;

C)   Award punitive damages to Plaintiffs pursuant to VARA and the common law;

D)   Award reasonable costs and attorneys' fees pursuant to VARA;

E)   Granting such further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated:    New York, New York
June 17, 2014

EISENBERG & BAUM, LLP

By: _____
Eric M. Baum, Esq.
Attorneys for Plaintiffs
24 Union Square East
Fourth Floor
New York, NY 10003
(212) 353-8700

27