UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

| | |
|---|---|
| JONATHAN COHEN, SANDRA FABARA, STEPHEN EBERT, LUIS LAMBOY, ESTEBAN DEL VALLE, RODRIGO HENTER DE REZENDE, DANIELLE MASTRION, WILLIAM TRAMONTOZZI, JR., THOMAS LUCERO, AKIKO MIYAKAMI, CHRISTIAN CORTES, DUSTIN SPAGNOLA, ALICE MIZRACHI, CARLOS GAME, JAMES ROCCO, STEVEN LEW, and FRANCISCO FERNANDEZ, | **MEMORANDUM & ORDER** Case No. 13-CV-05612 (FB) (RLM) |
| Plaintiffs, | |
| -against- | |
| G&M REALTY L.P., 22-50 JACKSON AVENUE OWNERS, L.P., 22-52 JACKSON AVENUE, LLC, ACD CITIVIEW BUILDINGS, LLC, and GERALD WOLKOFF, | |
| Defendants. | |

-----------------------------------------------------------x

| | |
|---|---|
| MARIA CASTILLO, JAMES COCHRAN, LUIS GOMEZ, BIENBENIDO GUERRA, RICHARD MILLER, CARLO NIEVA, and KENJI TAKABAYASHI, | **MEMORANDUM** Case No. 15-CV-3230 (FB) (RLM) |
| Plaintiffs, | |

1

-against-

G&M REALTY L.P., 22-50 JACKSON
AVENUE OWNERS, L.P., 22-52 JACKSON
AVENUE, LLC, ACD CITIVIEW
BUILDINGS, LLC, and GERALD
WOLKOFF,

           Defendants.

**BLOCK, Senior District Judge**

When this case first began on October 10, 2013, the plaintiffs principally invoked the Visual Artists Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A, to prevent the destruction of their paintings, all of which adorned either the exterior or the interior of buildings owned by the defendants. Now, the plaintiffs and defendants move for summary judgment. The defendants seek the dismissal of the plaintiffs' third and final complaint, comprising VARA and tort claims ("*Cohen* Complaint"); the plaintiffs ask for the dismissal of the defendants' counter-claim. For the reasons stated below, the plaintiffs' motion is GRANTED, and the defendants' motion is DENIED IN PART and GRANTED IN PART.

**I**

Because the history of this case has been set forth in the Court's prior decision denying the plaintiffs' request for a preliminary injunction, *see Cohen v. G&M Realty*

*L.P.*, 988 F. Supp. 2d 212 (E.D.N.Y. 2013), a brief overview will suffice.[1]

The several buildings comprising 5Pointz, owned by either Gerald Wolkoff ("Wolkoff" or "Gerald") or one of the four named corporate defendants that he controls, had housed various commercial enterprises for many years. In the 1990s, however, uninvited graffiti by many self-proclaimed aerosol artists colored the buildings' exterior walls. In 2002, so as to control this problem, Jonathan Cohen ("Cohen"), one of the plaintiffs, approached Wolkoff and offered to become the curator of any future works that would be permitted to be painted on the walls. Though the agreement's precise terms remain disputed, Wolkoff orally agreed to this general bargain.

Under Cohen's guidance, "the quality of the aerosol art vastly improved," and "[t]he site became known as 5Pointz and evolved into a mecca for high-end works by internationally recognized aerosol artists." *Id.* at 219; *see also* 2d Am. Compl. ¶ 1, No. 13-cv-5612 ("*Cohen* Compl."). Although Wolkoff recognized this fact and had even come to appreciate the work, he and the companies he managed (as well as his son, David Wolkoff) eventually decided to destroy the 5Pointz buildings and replace them with two-high rise towers containing 800 luxury rentals and more than 200 affordable

---

[1] Any facts cited within this Memorandum and Order ("Order") are taken from the parties' submissions, including their Local Rule 56.1 Statements, or the Court's prior decision.

3

units. The City Planning Commission blessed this project with a building permit issued on August 21, 2013.

To prevent their works' destruction, Cohen and other artists sued the defendants on October 10, 2013. As in their two later pleadings, the plaintiffs then asserted not only VARA claims but also common law tort claims. With the complaint, the plaintiffs filed a motion for a preliminary injunction. On October 17, 2013, the Court issued a temporary restraining order, and on November 12, 2013, denied their request for injunctive relief. On June 17, 2014, the plaintiffs filed the *Cohen* Complaint. In it, four claims are pled: (1) VARA, (2) intentional infliction of emotional distress ("IIED"), (3) conversion, and (4) property damage. *Cohen* Compl. ¶¶ 191–210. The defendants responded with an answer and counterclaim for abuse of process. Discovery commenced, and these motions followed.

On June 3, 2015, Maria Castillo and other artists ("*Castillo* Plaintiffs") initiated a separate lawsuit against the defendants ("*Castillo* Matter"). As here, the *Castillo* Plaintiffs adduce the same four claims in their pleadings. And, as here, they and the defendants filed motions for summary judgment raising the same substantive arguments, now addressed by the Court.

## II

### A. Plaintiffs' VARA Claims

### *1. Existence of Genuine Dispute*

"[A]s [the] defendants' expert correctly [and previously] acknowledged, VARA protects even temporary works from destruction." *Cohen*, 988 F. Supp. 2d at 227; *cf. Mass. Museum of Contemporary Art Found., Inc. v. Buchel*, 593 F.3d 38, 51 (1st Cir. 2010) (noting that, while "[t]he text of VARA itself does not state when an artistic project becomes a work of visual art subject to its protections," VARA protects certain "unfinished" works of art).

Moreover, even if a piece of art encompassed by VARA is destroyed, VARA provides that "monetary damages may be awarded" if "it is ultimately determined after trial that the plaintiffs' works were of 'recognized stature.'" *Cohen*, 988 F. Supp. 2d at 227; *see also Pollara v. Seymour*, 150 F. Supp. 2d 393, 399 n.9, n.10 (N.D.N.Y. 2001) (holding that, if VARA applied, damages would be owed).

The appropriate level of damages is set in the more general provisions of the Copyright Act ("Act"), which authorize either statutory or actual damages.[2] 17 U.S.C.

---

[2] Under the Act, "with respect to any one work," statutory damages may range from "not less than $750 or more than $30,000 as the court considers just." *Id.* § 504(c)(1). The plaintiffs may also elect to recover "actual damages," as shown by expert testimony. *Id.* § 504(b); *Faulkner v. Nat'l Geographic Soc'y*, 576 F. Supp. 2d 609, 615–20 (S.D.N.Y. 2008). The term is "broadly construed to favor victims." *Davis v. Gap, Inc.*, 246 F.3d 152, 164 (2d Cir. 2001). In general, "[t]he

§ 504(b), (c)(1) (setting forth relevant standards); H.R. REP. NO. 101-514, at (1990) (noting that VARA "makes all title 17 remedies (excluding the criminal sanctions provided by section 506) available to those authors," including "monetary damages").

Though statutorily undefined, "'[r]ecognized stature' is a necessary finding under VARA in order to protect a work of visual art." *Martin v. City of Indianapolis*, 192 F.3d 608, 612 (7th Cir. 1999). To make this requisite showing, "plaintiffs generally, but not inevitably, will need to call expert witnesses to testify before the trier of fact." *Carter v. Helmsley-Spear, Inc.*, 861 F. Supp. 303, 325 (S.D.N.Y. 1994). Naturally, defendants often respond with their own experts. *Cf. Scott v. Dixon*, 309 F. Supp. 2d 395, 400 (E.D.N.Y. 2004) ("The stature of a work of art is generally established through expert testimony."); *Phillips v. Pembroke Real Estate, Inc.*, 288 F. Supp. 2d 89, 97 (D. Mass. 2003) (noting that courts "generally" determine whether a particular work possessed "recognized statute" based on expert testimony); *Pollara v. Seymour*, 206 F. Supp. 2d 333, 336 (N.D.N.Y. 2002) (concluding that courts have regularly consulted the opinions of "art experts," "other members of the artistic community, or . . . some cross-section of society" in making this determination). As

---

award of the owner's actual damages looks at the facts from the point of view of the[] . . . owner; it undertakes to compensate the owner for any harm he suffered by reason of the . . . illegal act." *Id.* at 159.

a consequence, fighting experts are not uncommon in the sparse jurisprudence construing VARA's "recognized stature" criterion.

The plaintiffs have presented one expert, *see* Pls.' MSJ at 2–19, 21–26; the defendants offer another, *see* Defs.' MSJ at 20–35. The defendants spend much of their motion on undermining the viability of the plaintiffs' expert, *see* Defs.' MSJ at 12–29; the plaintiffs do the same in their opposition, Pls.' MSJ at 2–19, 21–26. Dueling (and facially credible) experts' divergent analyses create a triable issue of fact, which forecloses judgment in favor of any of the parties as to the plaintiffs' VARA claim.

## 2. *Defendants' Arguments*

At oral argument, the defendants focused on two aspects of their motion for summary judgment. First, they argued that the plaintiffs' expert report focused on the "recognized stature" of the artist, rather than the work itself, in contravention of VARA. Courts and parties, however, have employed a variety of methods to determine "recognized stature." *Pavia v. 1120 Av. of the Americas Assocs.*, 901 F. Supp. 620, 624, 627 (S.D.N.Y. 1995); *Carter*, 861 F. Supp. at 325 n.10. Such methods include inferring a particular *work*'s recognized stature on the basis of its *creator*'s reputation, *see, e.g., Carter*, 861 F. Supp. at 325; *Lubner v. City of L.A.*, 53 Cal. Rptr. 2d 24, 29 (Cal. Ct. App. 1996), or employing iconoclastic and disputable aesthetic theories, *see English v. BFC & R. East 11ths St. LLC*, No. 97 Civ. 7446, 1997 WL

7

746444, at *6 (S.D.N.Y. Dec. 3, 1997), which is precisely what the defendants contend happened here. Collectively, therefore, there is a legal basis for the plaintiffs' expert's chosen methodology. With VARA silent as to how a work's stature may be pegged, acceptance of such methodology in this case has the added benefit of honoring VARA's broad purpose. *See* H.R. REP. NO. 101-514, at 11.

Second, the defendants accuse the plaintiffs' expert of misapplying her own premises or disregarding her own methodology. Having examined the relevant report, the Court does harbor some skepticism regarding the cogency of the relevant opinions, not only due to their premises but also their rigor. Nonetheless, as the Second Circuit has stated, a trial court should limit itself to the exclusion of "junk science" under the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S, 579 (1993). *Iacobelli Constr. v. Cnty. of Monroe, Rochester Pure Waters Dist.*, 32 F.3d 19, 24–25 (2d Cir. 1993); *see also SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 134 (2d Cir. 2006). Here, when one looks at the pertinent reports, the plaintiffs' expert used a variety of factors in reaching her conclusion regarding the seeming stature of plaintiffs' work, including Cohen's multiple commissions from such entities as Coors, Heineken, Swatch, and Deutsche Bank; another's commissions from some of Brazil's famous brands; a third one's hiring by celebrity clients and a public park; the opinions of leading museum professionals and other artists; the individual artist's social media followers and their works' google hits; flattering

8

newspaper accounts in *The Boston Globe*, *The New York Times*, and *New York Magazine*; academic approval; private and public exhibitions of the artists' other work throughout the United States and other nations; numerous awards, including induction in the Graffiti Hall of Fame; and more. By citing such evidence, all of which courts have deemed as relevant to the question of recognized stature and may reasonably indicate a specific artist's place in the art world (and, by association, their works'), *see* Christopher J. Robinson, *The "Recognized Statute" Standard in the Visual Artists Rights Act*, 68 FORDHAM L. REV. 1935, 1948–58 (2000) (summarizing the courts' multiple approaches to this criterion), the plaintiffs' expert's report here "explain[ed] in detail which documents were reviewed, relevant industry customs and practices, and the general bases for ... [her] opinions." *Iacobelli Constr*, 32 F.3d at 25 (alteration in original). Having done so, the expert and the plaintiffs met the *Daubert* minimum, and any remaining problems with the expert are for the jury to decide.

## B.  Defendants' Counterclaim

To state a claim for abuse of process under New York law, a party must show that an opponent "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). "The crux of a malicious abuse of process claim is the collateral objective

9

element," *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), and "the gist of abuse of process is the improper use of process ***after*** it is regularly issued," *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (emphasis added). "[T]he New York Court of Appeals has made clear that '[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process.'" *Savino*, 331 F.3d at 77. Rather, only "an improper purpose" suffices to meet this tort's "collateral objective" prong. *Id.* An abuse of process claim thus requires an ulterior purpose such as the infliction of economic harm, extortion, blackmail, or retribution. *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 391 (E.D.N.Y. 2013).

In their answer, the defendants plead a counterclaim for abuse of process based on Cohen's alleged agreement with Wolkoff. This accord, they contend, was invented by Cohen "for the improper collateral purpose of preserving 5Pointz as a tourist attraction, for which Cohen had no legal basis." Ans. to 2d Am. Compl. ¶ 33. But, whatever Cohen's motive for preserving 5Pointz, the plaintiffs sought a temporary restraining order and preliminary injunction to prevent the destruction of their artistic work; VARA offers exactly that remedy for that purported misdeed. The plaintiffs thus did no more than invoke a particular law to achieve the end for which it was designed. When legal processes are used for their intended purposes, no cognizable claim for abuse of process can possibly exist. *See, e.g.*, *Mosdos v. Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 212 (S.D.N.Y. 2014) (quoting *Bd. of Educ.*

10

*of Farmingdale Union Free sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 38 N.Y.2d 397 (1975)); *see also, e.g.*, *Granito v. Tiska*, 181 F. Supp. 2d 106, 118 (N.D.N.Y. 2001).

## C.  Plaintiffs' State Law Claims

VARA preempts all equivalent legal or equitable rights "with respect to works of visual art" and thus deprives any person of "any such right or equivalent right in any work of visual art under the common law or statutes of any State." 17 U.S.C. § 301(a); *see also Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 232 (4th Cir. 1993) (describing § 301(a) as containing "a broad mandatory preemption provision for causes of action equivalent to copyright claims" like those under VARA). But VARA does not "annul[] or limit[] any rights or remedies under the common law or statutes of any State with respect to . . . subject matter that does not come within the subject matter of copyright" or "activities violating legal or equitable rights that are not equivalent to any of the rights conferred by . . . [it] with respect to works of visual art." 17 U.S.C. § 301(b)(1), (3). VARA thus does not preempt all state law torts with similar elements to VARA. *Coll. of Charleston Found. v. Ham*, 585 F Supp 2d 737, 747–48 (D.S.C. 2008). Rather, it subsumes only those whose essential predicates which can be found in the typical VARA claim. *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 763 (D. Colo. 2007).

Here, the plaintiffs' conversion and property damage claims are predicated on the defendants' destruction of their artwork. But for VARA, the plaintiffs would have no right to prevent 5Pointz's destruction by its rightful and legal owner; hence, the plaintiffs' "moral rights" to prevent another's disposition of his property arise purely under VARA. Because the plaintiffs' conversion and property damage claims wholly depend on the viability of their VARA claim, the Court finds them to be fully preempted.

The plaintiff's IIED claim, meanwhile, is premised on the emotional ramifications of the defendants' allegedly unauthorized destruction of 5Pointz. Therefore, because, but for VARA, the defendants would have had the legal right to demolish their own property, this claim is duplicative of the plaintiffs' other two state law claims. Predicated on rights conferred by VARA, they must be deemed similarly preempted. *See, e.g., Giddings v. Vision House Prod., Inc.*, No. CV 05-2963-PHX-MHM 2007 WL 2274800, at *2–3 (D. Ariz. Aug. 7, 2007) (so finding); *Sturdza v. United Arab Emirates*, 350 U.S. App. D.C. 154, 281 F.3d 1287, 1305 (D.C. Cir. 2002) (same); *Rainey v. Wayne State Univ.*, 26 F. Supp. 2d 963, 969 (E.D. Mich. 1998) (same). To contend that the defendants intended to harm them deeply, as the plaintiffs do here, does not change this essential calculus. *See, e.g., Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) ("[W]e take a restrictive view of what extra elements transform an otherwise equivalent claim into

one that is qualitatively different from a copyright infringement claim."); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997) ("An action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature.").

In any event, under New York law, "a cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by the defendants so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sheila C. v. Povich*, 781 N.Y.S.2d 342, 351 (1st Dep't 2004). Because the defendants destroyed 5Pointz only after the Court dissolved its temporary restraining order and did no more than raze what they rightfully owned, the defendants simply did not engage in the kind of outrageous and uncivilized conduct for whose punishment this disfavored tort was designed. *See* RESTATEMENT (SECOND) OF TORTS § 46 cmt. g ("[An] actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress."),[3] *cited in, e.g.*, *Howell v. New York Post Co.*, 81 N.Y.2d 115, 125–26 (N.Y. 1993).

---

[3] New York has adopted this particular section of the Restatement. *See Fischer v Maloney*, 43 N.Y.2d 553, 557 (N.Y. 1978).

# III

For the foregoing reasons, the defendants' motion is GRANTED as to the plaintiffs' claims for conversion, property damage, and IIED, but DENIED as to the plaintiffs' VARA claim, and the plaintiffs' motion is GRANTED with respect to the defendants' counterclaim.[4] Accordingly, the matter shall proceed to trial on the VARA claim issue.[5] In addition, as the plaintiff's counsel was unable to specify the number of artwork at issue, counsel is directed to submit a final list to the defendants and the Court on or before May 1, 2017. Depending on the length of the list, the Court

---

[4] For the reasons stated in this Order, the motions for summary judgment in the *Castillo* Matter, which echo the arguments dissected within this Order, will be similarly disposed. Hence, the plaintiffs' motion will be granted, and the defendants' motion will be granted in part and denied in part.

[5] This Order does not address an issue raised, but not addressed, by the survival of this claim. Because VARA incorporates the Act's damages section, it arguably compels a jury trial regardless of the relief sought. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) ("[T]he Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself."). However, whether or not a VARA plaintiff is entitled to a jury trial when statutory damages are exclusively sought is an open question in the Second Circuit. *Pollara v. Seymour*, 344 F.3d 265, 268 (2d Cir. 2003) (declining to decide the issue); *see also, e.g.*, *Pollara*, 150 F. Supp. 2d at 399 n.10 (holding that no jury trial is required under VARA). At present, the plaintiffs have not made such an election, and the *Cohen* Complaint appears to pray for, among other things, actual damages. *See* Cohen Compl. at 26. Regardless, where a case presents common factual issues necessary to the resolution of a party's legal and equitable rights, precedent commands that the legal claims be tried to a jury first. *See Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001), *abrogated in unrelated part by Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

reserves judgment as to whether the list is short enough to be handled by a single jury.

**SO ORDERED**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 31, 2017